**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DOWNHOLE INTERNATIONAL INC., AUSTRALASIAN SHAREATE TOOLS PTY LTD, and SHAREATE TOOLS LTD,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH CORP INTERNATIONAL, INC., TOM BALTHROP, SONNY JAY DENIS BEAUCHAMP, ZUKRHA BEAUCHAMP, 3K SERVICES LLC, LUKE GROVES, LIBERTY BIT CO. also known as LIBERTY BIT CO., LLC, WESLEY BALTHROP, and LIBERTY BIT SERVICES, INC.,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Downhole International Inc. ("DHI", or the "Company"), Australasian Shareate Tools PTY LTD ("ASTL"), and Shareate Tools Ltd ("STL") (collectively herein "Plaintiffs") by and through their attorneys, Stamoulis & Weinblatt LLC and KOR Law LLP, complain of Defendants South Corp International Inc. ("SCI"), Tom Balthrop ("T. Balthrop"), Sonny Jay Denis Beauchamp ("S. Beauchamp"), Zukrha Beauchamp ("Z. Beauchamp"), 3K Services LLC ("3K"), Luke Groves, Liberty Bit Co. also known as Liberty Bit Co., LLC ("LBC"), Wesley Balthrop ("W. Balthrop"), and Liberty Bit Service, Inc. ("LBS") (collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

1. This is an action by DHI and its majority shareholder, ASTL, against DHI's de facto officers, Defendants T. Balthrop and S. Beauchamp; a DHI board member, Z. Beauchamp; and DHI's minority shareholder, SCI, for engaging in unauthorized corporate acts, namely the purported sale of all or substantially all of DHI's assets without required authorization by ASTL

and DHI's board of directors (the "Board"), which, if consummated, would have constituted a liquidation of DHI, and the change of its corporate governance that cause DHI to de facto cease to exist (the "Unauthorized Sale").

2. Plaintiffs seek declaratory relief in the form of a judgment declaring the Unauthorized Sale of DHI assets null and void *ab initio* because it violates Delaware General Business Law § 271 ("Section 271") and quieting title pursuant to Section 6501 of Title 10 of the Delaware Code by ordering that DHI holds title to the assets, namely the Bits as defined below, free and clear.

3. This is also an action by Plaintiffs against the bad-faith buyer, 3K, and related parties, Defendants Groves, LBC, W. Balthrop, and LBS, who colluded with Defendants T. Balthrop and S. Beauchamp to orchestrate the Unauthorized Sale. Plaintiffs hereby seek to rescind the physical possession of DHI's assets that were unlawfully transferred by Defendants to 3K and to enjoin 3K and Defendants from further transferring possession of DHI's lawfully-owned assets.

4. Plaintiffs also seek mandatory injunction against Defendants to prevent them from negotiating or effecting the sale of DHI's lawfully-owned assets among themselves or to any other third party.

5. This action sounds in mandatory injunction; unjust enrichment; breach of fiduciary duty; breach of the covenant of good faith fair dealing; conversion; and replevin against Defendants for their unauthorized and unlawful attempt to sell all or substantially all DHI's assets in violation of the Delaware General Corporation Law, as well as the contracts among the relevant parties.

## THE PARTIES

6. At all relevant times, DHI was and still is a corporation formed under the laws of the State of Delaware.

7. At all relevant times, ASTL was and still is an Australian entity and is the majority shareholder of DHI.

8. At all relevant times, STL was and still is a limited liability company formed under the laws of China and is the ultimate parent of ASTL.

9. STL was and still is an international manufacturing service provider in China specializing in cemented carbide materials, rock drilling tools, and comprehensive mining services, including the production and sales of tricone bits and single cone bits (collectively herein "Bits").

10. STL is engaged in the business of providing research and development, manufacturing, sales, and services.

11. STL supplies DHI with Bits to sell in the United States.

12. At all relevant times, upon information and belief, SCI was and still is a Canadian corporation involved in the business of providing Bits and is the minority shareholder of DHI.

13. At all relevant times, upon information and belief, Defendant T. Balthrop is an individual domiciled in the State of Oklahoma in the town of Duncan who holds himself out as an officer of DHI and engages in acts on behalf of DHI.

14. Upon information and belief, Defendant T. Balthrop controls one or more entities in the United States, including but not limited to Defendants LBS and LBC.

15. At all relevant times, upon information and belief, Sonny Jay Denis Beauchamp is an individual residing in Alberta, Canada who holds himself out as an officer of DHI and engages in acts on behalf of DHI.

16. Upon information and belief, Defendant S. Beauchamp is also an officer and principal of SCI.

17. At all relevant times, upon information and belief, Zukrha Beauchamp is an individual residing in Alberta, Canada.

18. Upon information and belief, Defendant Z. Beauchamp is the wife of Defendant S. Beauchamp.

19. At all relevant times, Ms. Beauchamp was and is a duly-elected member of DHI's Board.

20. At all relevant times, upon information and belief, Defendants S. and Z. Beauchamp maintain an office or residence at 7900 Rodeo Trail, Suite 120, Mansfield, Texas 76063.

21. At all relevant times, Defendant SCI was and is controlled by Defendant Balthrop and/or Defendant Beauchamp.

22. At all relevant times, upon information and belief, Defendant 3K is a limited liability company formed under the laws of the State of Texas.

23. Upon information and belief, Defendant 3K maintains a mailing address at 3105 San Saba Dr., Odessa, Texas 79765 and an office at 10 Santa Elena Ct., Odessa, Texas 79765.

24. At all relevant times, upon information and belief, Defendant 3K is in the business of providing well water drilling services.

25. Upon information and belief, Defendant 3K lists its website as "3kservicedrillbits.com", but it is not a working link.

26. Upon information and belief, Defendant Luke Groves is an individual and is domiciled in the State of Texas.

27. Upon information and belief, Defendant Luke Groves is the registered agent for Defendant 3K.

28. Upon information and belief, Defendant Luke Groves operates and controls Defendant 3K.

29. At all relevant times, upon information and belief, Defendant LBC was and is an entity formed under the laws of the State of Oklahoma with an office in Duncan, Oklahoma.

30. Upon information and belief, at all relevant times, Defendant LBC was and is operated and controlled by Defendant W. Balthrop.

31. Upon information and belief, Defendant LBC is in the business of supplying new and rebuilt drill bits.

32. Upon information and belief, Defendant W. Balthrop is an individual domiciled in the State of Oklahoma.

33. Upon information and belief, at all relevant times, Defendant LBS is and was an entity formed under the laws of the State of Texas.

34. Upon information and belief, Defendant LBS is operated and controlled by Defendants T. Balthrop and W. Balthrop.

35. Upon information and belief, Defendant LBS is in the business of supplying drill bits.

36. Upon information and belief, Defendant Groves is and was an account manager for LBS and/or LBC for over twenty years.

## JURISDICTION AND VENUE

37. Jurisdiction is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1332 and 10 Del. C. ¶§§ 3104, 3114.

38. There is complete diversity among the parties pursuant to 28 U.S.C. § 1332.

39. The amount in controversy exceeds $75,000 in accordance with 28 U.S.C. § 1332.

40. Defendants transact business in the State of Delaware and purposefully direct their conduct toward the State of Delaware.

41. Jurisdiction is also proper pursuant to Section 10 of a letter agreement, dated April 9, 2024, from which the claims herein arise that was executed between Plaintiffs DHI and STL, on the one hand, and Defendants T. Balthrop and S. Beauchamp, on the other hand (the "Letter Agreement"), which governs the sale of DHI's Bits.

42. A true and correct copy of the Letter Agreement is attached hereto as **Exhibit A** and is incorporated by reference into this Complaint in its entirety**.**

43. In Section 10 of the Letter Agreement, the parties consented to jurisdiction in this Court.

44. Venue is proper pursuant to Section 10 of the Letter Agreement, as the parties to the Letter Agreement waived all forum non conveniens objections.

## STATEMENT OF FACTS

### A. FORMATION AND GOVERNANCE OF DHI

45. On or about July 8, 2022, ASTL and Defendant SCI formed DHI in the state of Delaware.

46. On or about July 8, 2022, DHI's Secretary certified DHI's by-laws (the "By-Laws").

47. A true and correct copy of the By-Laws is attached hereto as **Exhibit B** and is incorporated by reference into this Complaint in its entirety.

48. ASTL is the majority shareholder of DHI.

49. ASTL owns 2,550 of the 5,000 issued and outstanding shares of DHI, constituting 51% ownership of DHI pursuant to a stock certificate issued on July 8, 2022 (the "Stock Certificate").

50. A true and correct copy of the Stock Certificate is attached hereto as **Exhibit C** and is incorporated by reference into this Complaint in its entirety.

51. SCI is the minority shareholder of DHI.

52. SCI owns 49% of issued and outstanding shares of DHI.

53. On July 8, 2022, by unanimous written consent, the shareholders of DHI elected three members of the Board, including Defendant Z. Beauchamp, Guozhu Liu and Xiner "Lucy" Wu (together, the "Board Members") (the "Unanimous Written Consent").

54. A true and correct copy of the July 8, 2022 Unanimous Written Consent is attached hereto as **Exhibit D** and is incorporated by reference into this Complaint in its entirety.

55. On or about April 9, 2024, Plaintiffs STL and DHI and Defendants T. Balthrop and S. Beauchamp entered into the Letter Agreement regarding the sale of Bits in the United States.

## B. DHI'S BUSINESS OF SELLING BITS

56. As per the Agreement, STL has been supplying DHI the Bits to sell in the United States.

57. Consistent with the Letter Agreement, Defendants S. Beauchamp and T. Balthrop have been holding themselves out and acting as the officers of the Company to source buyers for DHI to sell the Bits into the market in the United States.

58. Since the formation of the Company, STL has supplied the Company with Bits on credit with a fair market value of approximately of $1,500,000 to $2,000,000, which constitutes all or substantially all of the assets of the Company.

59. The current value of DHI's inventory of Bits is $1,700,000.

60. To date, Defendants S. Beauchamp and T. Balthrop have been unsuccessful in selling the Bits in the United States market and apparently lack the relevant professional experience or network to sell the Bits.

61. Throughout over four years of operations, the turnover rate of the inventory has consistently fallen below the level that Defendants S. Beauchamp and T. Balthrop promised to STL, ASTL and DHI.

62. By November 2025, ASTL and STL, on the one side, and Defendants SCI, S. Beauchamp and T. Balthrop, on the other side, engaged in discussion as to how to improve the operations of the Company.

63. In or about November 2025, DHI's shareholders began discussing the liquidation of DHI and the disposal method for its remaining inventory of Bits, valued at the time at approximately $1,700,000.

64. On or about November 30, 2025, Xiao "Shawn" Wang, a sales representative of STL responsible for communication and order management between STL and DHI, traveled to Calgary, Canada, where SCI is located, to discuss the dissolution of DHI and disposal of inventory.

65. During that meeting, STL presented SCI's principal, Defendant S. Beauchamp, and his business partner, Defendant T. Balthrop, with an offer to buy out the DHI inventory at a preferential price.

66. Defendants T. Balthrop and S. Beauchamp responded by expressing their strong interest in the offer and proposed selling as much inventory as possible before April 2026.

67. Defendants T. Balthrop and S. Beauchamp further agreed to purchase the remaining inventory at a mutually agreed price, with full payment to be settled by the end of October 2026, via a third-party entity owned by either Defendant T. Balthrop or S. Beauchamp.

68. However, the proposal discussed at the November 30, 2025 meeting ultimately fell through due to an inability to reach consensus on payment terms and deadlines.

69. Consequently, STL proposed that its wholly-owned U.S. subsidiary, American Mining Services LLC, would buy out the inventory.

70. This proposal was rejected by Defendant S. Beauchamp on behalf of himself, Defendant T. Balthrop and any third-party entity owned or controlled by either of them.

71. The parties remained at an impasse regarding how to dispose of DHI's inventory of Bits.

## C. THE UNAUTHORIZED SALE

72. On December 6, 2025, Mr. Wang visited S. Beauchamp's personal residence to continue discussions between DHI, STL and SCI.

73. During the discussion, Defendant S. Beauchamp abruptly informed Mr. Wang that he and Defendant T. Balthrop planned to sell the entire inventory of Bits to a single third-party, 3K (the "Buyer"), on credit in the Unauthorized Sale.

74. According to Defendant S. Beauchamp, the Unauthorized Sale was to be conducted without a formal Purchase Order from the Buyer and without consulting Plaintiffs.

75. Defendants S. Beauchamp and T. Balthrop expressed that they did not intend to require any form of deposit from the Buyer to safeguard DHI's shareholders' interests.

76. The Unauthorized Sale involves disposing of all or substantially all of DHI's assets, as it would transfer ownership of DHI's entire inventory of Bits.

77. Other than the Bits, for all of the relevant time, DHI has had no other assets of any meaningful value.

78. Unbeknownst to Plaintiffs at the time, in or about November 2025, Defendants SCI, S. Beauchamp and T. Balthrop caused physical possession of all or substantially all of DHI's Bits to transfer Defendants 3K and Groves without informing Plaintiffs.

79. Unbeknownst to Plaintiffs at the time, in or about November 2025, Defendants SCI, S. Beauchamp and T. Balthrop caused physical possession of all or substantially all of DHI's Bits to transfer to Defendants 3K and Groves without seeking authorization from the Board or ASTL, DHI's majority shareholder.

80. Defendants SCI, S. Beauchamp and T. Balthrop caused the transfer of physical possession of the Bits without providing any terms and conditions of the Unauthorized Sale to Plaintiffs.

81. Upon information and belief, Defendants SCI, S. Beauchamp and T. Balthrop caused the transfer of physical possession of the Bits without executing any proper documentation of the transfer of possession or the Unauthorized Sale.

82. To date, Defendants SCI, S. Beauchamp and T. Balthrop have refused to disclose the terms and conditions the Unauthorized Sale to Plaintiffs, stating only that the Unauthorized Sale was done on credit, without receiving any deposit or any other protective measure.

83. Plaintiffs did not learn that Defendants already transferred possession of the Bits in November 2025 until January 2026 after Plaintiffs had expressly informed Defendants SCI, T.

Balthrop, S. Beauchamp, Z. Beauchamp and 3K that the Unauthorized Sale was rejected by Plaintiffs.

### D. PLAINTIFFS' EFFORTS TO PROTECT DHI FROM THE UNAUTHORIZED SALE

84. Upon learning of the contemplated Unauthorized Sale, Plaintiffs engaged counsel.

85. On or about December 9, 2025, Plaintiffs' counsel, Liu, Chen & Hoffman LLP, reached out to Defendants T. Balthrop and S. Beauchamp to express Plaintiffs' concerns with the Unauthorized Sale and remind Defendants SCI, T. Balthrop and S. Beauchamp that Section 271 applies and must be complied with.

86. Accordingly, ASTL, as the majority shareholder, requested that the Buyer grant the Company a purchase money security interest in the Bits contemplated to be sold.

87. Moreover, on or about December 12, 2025, Plaintiffs' counsel again followed up with Defendants regarding the Unauthorized Sale.

88. Despite Plaintiffs' counsel's repeated correspondences to Defendants, Defendants failed to provide any concrete information on the Unauthorized Sale, a transaction which would require notice to and the approval of ASTL and the Board to move forward.

89. To date, Defendants have not provided formal notice of the Unauthorized Sale to ASTL or the Board.

90. To date, Defendants have not obtained approval for the Unauthorized Sale from ASTL.

91. To date, Defendants have not obtained approval for the Unauthorized Sale from the Board.

92. Plaintiffs do not approve of the Unauthorized Sale.

93. Defendants have repeatedly declined to provide any information to Plaintiffs about the Unauthorized Sale to 3K.

94. Defendants SCI, T. Balthrop, and S. Beauchamp have repeatedly refused to provide Plaintiffs with contact information for Defendants 3K and Groves or to otherwise facilitate a discussion between Plaintiffs and Defendants 3K and Groves.

95. ASTL and STL, through Plaintiffs' counsel, offered to make a 1.5% sale price concession to the Buyer in exchange for a purchase money security interest, as a minimum legal protection for any account receivable arising from the purported sale.

96. In response, Defendants still refused to provide any information about the Unauthorized Sale and apparently even declined to convey the offer of concession, which amounts to approximately $30,000, to the Buyer.

97. Defendants S. Beauchamp and T. Balthrop initially pretended not to understand the concept of a purchase money security interest.

98. Plaintiffs' counsel explained to Defendants S. Beauchamp and T. Balthrop that a cause any detriment to a bona fide third party purchaser of DHI's Bits.

99. Plaintiffs' counsel explained to Defendants S. Beauchamp and T. Balthrop that a purchase money security interest would only enhance DHI's position relative to other creditors of the Buyer.

100. Defendants S. Beauchamp and T. Balthrop continued to pretend they did not understand the construct and again declined to convey to the Buyer the offer of a $30,000 concession in exchange for minimum legal protection.

101. After Plaintiffs' counsel suggested that Defendants consult independent legal counsel, Defendants S. Beauchamp and T. Balthrop refused to provide the identity of their attorney and to put Plaintiffs' counsel in contact with their attorney, despite repeated requests to do so.

102. Plaintiffs, through their counsel, conveyed the offer of concession directly to Defendant 3K in an email, but received no response.

103. A true and correct copy of the correspondences made on behalf of Plaintiffs by Plaintiffs' counsel in December 2025 is attached hereto as **Exhibit E** and is incorporated by reference into this Complaint in its entirety.

**E. THE BOARD'S RESOLUTION REJECTING THE UNAUTHORIZED SALE**

104. Having received no substantive response from Defendants, an emergency special meeting of the Board of Directors of DHI was called on January 9, 2026, to discuss the Unauthorized Sale.

105. On January 8, 2026, pursuant to Section 2.3 of the By-Laws, Board Member Lucy Wu sent a notice by email to the Board Members calling an emergency special meeting of the Board to be held on January 9, 2026 via Zoom (the "Special Meeting").

106. The purpose of the Special Meeting was to discuss and address the Unauthorized Sale of DHI's entire inventory of bits to a single third-party buyer, as proposed by Defendants S. Beauchamp and T. Balthrop (the "Unauthorized Sale").

107. A true and correct copy of the January 8, 2026 email notice calling the Special Meeting is attached hereto as **Exhibit F** and is incorporated by reference into this Complaint in its entirety.

108. The Special Meeting was held on January 9, 2026 at PST 15:00 as scheduled.

109. Board Members Liu and Wu attended the Special Meeting.

110. Board Member and Defendant Z. Beauchamp did not attend the Special Meeting.

111. The presence of Board Members Liu and Wu at the Special Meeting constituted a quorum pursuant to the By-Laws.

112. Defendant S. Beauchamp, apparently alerted by his wife, Defendant Z. Beauchamp, attended the Special Meeting.

113. Defendant S. Beauchamp is not a DHI Board Member.

114. During the Special Meeting Defendant S. Beauchamp did not disclose to the Board that the Unauthorized Sale had already purportedly taken place.

115. During the Special Meeting Defendant S. Beauchamp did not disclose to the Board that Defendants SCI, T. Balthrop and S. Beauchamp had already transferred possession of all or substantially all of DHI's Bits to Defendants 3K and Groves.

116. Because a quorum was present at the Special Meeting, the Board held a vote to determine whether the Unauthorized Sale is in the best interests of DHI and whether the Board authorized and adopted the Unauthorized Sale pursuant to Section 271.

117. Board Members Liu and Wu each respectively voted that the Unauthorized Sale is not in DHI's best interests and voted against authorization of the Unauthorized Sale by the Board.

118. Because the collective votes of the Board Members present at the Special Meeting constitute a decision by the majority of the quorum, the outcome reflects a legally binding decision by the Board in accordance with Section 2.9 of the By-Laws.

119. As Secretary, Board Member Wu caused minutes reflecting what occurred at the Special Meeting to be drafted.

120. The draft minutes shall soon be ratified by the Board.

121. On January 9, 2026, Board Members Liu and Wu executed a resolution by the Board reflecting the outcome of the vote that occurred at the Special Meeting (the "Resolution").

122. A true and correct copy of the Resolution is attached hereto as **Exhibit G** and is incorporated by reference into this Complaint in its entirety.

123. In the Resolution, the Board resolved that the Unauthorized Sale is against the best interests of DHI and is therefore unauthorized, rejected and abandoned by the Board.

124. The Board also resolved that the Unauthorized Sale constituted a sale of all or substantially all of DHI's assets and therefore required authorization from the Board and approval by a vote of DHI's shareholders pursuant to Section 271.

125. The Board also resolved that a shareholder vote was unnecessary given the Board's abandonment, rejection, and non-authorization of the Unauthorized Sale.

126. The Board considers the Unauthorized Sale to carry a significant risk of bad debt and to be a transaction beyond the ordinary course of business of DHI.

127. The Unauthorized Sale may not proceed and must be unwound to the extent Defendants have already transacted.

128. Completion of the Unauthorized Sale would substantially and significantly prejudice Plaintiffs, as it would effectively cause DHI to cease to exist and effect a change in corporate governance.

129. A copy of the Resolution was sent to Defendants SCI, T. Balthrop and S. Beauchamp via email by Plaintiff's counsel on January 10, 2026.

130. Plaintiffs, through legal counsel, sent Defendants a cease-and-desist letter, dated January 10, 2026, enclosing the Board Resolution and demanding written confirmation by the close of business on January 12, 2025, from Defendants that the Unauthorized Sale would not proceed (the "Cease-and-Desist Notice").

131. The Cease-and-Desist Notice instructed Defendants SCI, T. Balthrop and S. Beauchamp to share the Resolution with the Buyer to provide formal notice to Defendants 3K and Groves that the Unauthorized Sale was rejected by DHI and could not go forward.

132. A true and correct copy of the Cease-and-Desist Notice is attached hereto as **Exhibit H** and is incorporated by reference into this Complaint in its entirety.

133. Defendants did not respond to the Cease-and-Desist Notice in writing as requested.

134. Instead, an attorney emailed Plaintiff's counsel asking that the firm call him.

135. On January 13, 2026, Plaintiff's counsel emailed Defendants' counsel a copy of the Cease-and-Desist Notice.

### F. DEFENDANTS' BAD-FAITH EFFORTS TO OBTAIN DHI'S RETROACTIVE RATIFICATION OF THE UNAUTHORIZED SALE AFTER COLLUDING, VIOLATING DELAWARE LAW, AND ENGAGING IN UNAUTHORIZED CORPORATE ACTS

136. After receiving the Cease-and-Desist Notice and Resolution, Defendants engaged in a series of bad-faith efforts to obtain retroactive approval for the Unauthorized Sale from Plaintiffs.

137. Plaintiffs now reasonably believe that Defendants are, and have been, colluding with each other to transfer all DHI's assets to the Buyer as a *fait accompli*, so as to pillage DHI and undermine and destroy the rights and interests of ASTL, as the majority shareholder of the Company, and STL, as the supplier and creditor of the Company.

138. Because the Buyer has not responded to Plaintiffs, Plaintiffs reasonably fear that Defendant 3K is not a bona fide creditworthy purchaser.

139. Because the Buyer has not responded to Plaintiffs, Plaintiffs reasonably fear that Defendants 3K and Groves are colluding with the other Defendants to fraudulently transfer DHI's Bits, turning the assets into fungible cash that would easily disappear without a trace.

140. The Buyer's conversion of the Bits into untraceable, fungible cash would force DHI to pursue Defendants 3K and Groves for the resultant account payable which the Buyer has no incentive or means to pay.

141. The Buyer is operated and controlled by Defendant Groves.

142. Defendants 3K and Groves are not bona fide good-faith buyers of the Bits, as the Unauthorized Sale was not an arms-length business transaction.

143. Defendant Groves has a long-standing friendship and business relationship with Defendants T. Balthrop and W. Balthrop.

144. Defendants T. Balthrop and S. Beauchamp disclosed to Plaintiffs' counsel that Defendant Groves once instructed his wife that in the event Defendant Groves passes away, his wife should entrust his estate to Defendant T. Balthrop.

145. Upon information and belief, Defendant Groves worked for Defendants LBC and/or LBS for over twenty (20) years as an account manager.

146. Defendants LBC and LBS are owned and controlled by Defendants T. Balthrop and W. Balthrop.

147. Defendants LBC and LBS are in the business of supplying drill bits and operate in the same areas of Texas and Oklahoma as Defendants 3K, Groves, SCI, T. Balthrop, Z. Beauchamp and S. Beauchamp.

148. The incestuousness of Defendants' business operations and principals supports the conclusion that the Unauthorized Sale was the product of self-dealing intended to deprive DHI, ASTL and STL of the value of their assets and investments.

149. Plaintiffs repeatedly requested copies of draft sales agreements related to the Unauthorized Sale, but Defendants refused to provide any such documents, including on or about January 21, 2026.

150. In or about mid-January 2026, Defendant S. Beauchamp engaged Board Member Wu in discussions on the WeChat platform about how to renegotiate the terms of the Unauthorized Sale to legitimatize it after the fact.

151. During the discussion with Board Member Wu in mid-January 2026, Defendant S. Beauchamp revealed that Defendants T. Balthrop and S. Beauchamp agreed upon a purchase price with Defendant 3K back on December 9, 2025, the same day that Plaintiffs' counsel first reached out to them explaining that the Unauthorized Sale could not proceed without obtaining required approval.

152. Defendants T. Balthrop and S. Beauchamp agreed upon a purchase price with Defendant 3K on December 9, 2025, after already transferring possession of DHI's Bits to Defendants 3K and Groves.

153. The timing of the transfer of possession of the Bits compared to the date a price was purportedly negotiated further demonstrates that the Unauthorized Sale resulted from collusion among friends and does not amount to an arms-length purchase of Bits by a bona fide buyer.

154. On or about January 21, 2026, in a WeChat message, Defendant S. Beauchamp offered for Defendant 3K to return physical possession of the Bits to DHI in exchange for an agreement by DHI that would allow Defendant 3K to purchase the Bits from DHI at the price offered to 3K by Defendants SCI, T. Balthrop and S. Beauchamp on December 9, 2025.

155. In response, Board Member Wu requested to communicate directly with Defendants 3K and Groves.

156. Defendant S. Beauchamp refused to provide Board Member Wu access to Defendant 3K.

157. Board Member Wu requested that Defendant 3K present DHI with a draft agreement with the terms proposed by Defendant S. Beauchamp.

158. In response, Defendant S. Beauchamp stated that Defendant 3K would not draft any agreement.

159. Defendant 3K's purported willingness to return possession of the Bits to DHI is an acknowledgement that the Unauthorized Sale was null and void *ab initio* because it violated Delaware law.

160. Defendant 3K's purported willingness to return possession of the Bits to DHI is an acknowledgement that the Unauthorized Sale did not transfer title to the Bits from DHI to 3K.

161. Defendant S. Beauchamp and T. Balthrop's willingness to renegotiate the terms of the Unauthorized Sale with DHI after purportedly engaging in the transaction is an admission that they engaged in unauthorized corporate acts.

162. Defendant S. Beauchamp and T. Balthrop's willingness to renegotiate on behalf of Defendant 3K the terms of the Unauthorized Sale with DHI after purportedly engaging in the transaction is an acknowledgment that title to the Bits did not transfer from DHI.

163. Despite these acknowledgments and admissions by Defendants, Defendant S. Beauchamp, on behalf of Defendants 3K and Groves, extortionately threatened that if Plaintiffs did not agree to allow Defendant 3K to purchase the Bits at the unauthorized rate offered by

Defendants SCI, S. Beauchamp and T. Balthrop on December 9, 2025, Defendant 3K would retain possession of the Bits, meaning all or substantially all of DHI's $1.7 million assets.

164. A true and correct copy of messages exchanged between Board member Wu and Defendant S. Beauchamp in mid-January 2026 is attached hereto as **Exhibit I** and is incorporated by reference into this Complaint in its entirety.

165. Upon information and belief, Defendants W. Balthrop, LBS and LBC are colluding with Defendants SCI, T. Balthrop, S. Beauchamp, 3K, Groves and Z. Beauchamp to obtain and now retain possession of DHI's Bits in violation of Delaware law.

166. Upon information and belief, Defendants W. Balthrop, LBS and LBC are colluding with Defendants SCI, T. Balthrop, S. Beauchamp, 3K, Groves and Z. Beauchamp to deprive Plaintiffs from receiving the value of their assets and investments.

167. Upon information and belief, Defendants W. Balthrop, LBS and LBC are colluding with Defendants SCI, T. Balthrop, S. Beauchamp, 3K, Groves and Z. Beauchamp to conceal the location of DHI's Bits.

## CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment
### (Voiding Sale)

168. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

169. Under Delaware law, shareholder approval is required for the sale, lease, or exchange of "all or substantially all" of a corporation's assets. *See* 8 Del. C. § 271.

170. This requirement mandates a two-step process: first, the board of directors must approve the transaction, and then the shareholders must authorize it by a majority vote of the outstanding stock entitled to vote.

171. The determination of whether a transaction involves "substantially all" of a corporation's assets is both quantitative and qualitative. Delaware courts have clarified that this standard is not based solely on the size of the sale but also on its qualitative effect on the corporation.

172. The Delaware Supreme Court affirmed that a transaction constitutes "substantially all" of a corporation's assets if it results in a radical transformation of the corporation, such as the sale of its primary income-generating asset. *See* Thorpe by Castleman v. CERBCO, 676 A.2d 436 (Del. 1996).

173. It is well-settled that this Court emphasized that the statute applies only to transactions involving "all or substantially all" of the corporation's assets, and this determination must relate to the statutory language and the specific facts of the case. *See* Gimbel v. Signal Cos., 316 A.2d 599 (Del. Ch. 1974).

174. The Unauthorized Sale involved the sale of all Bits currently in DHI's inventory.

175. The Bits are all or substantially all of DHI's assets.

176. The fair market value of the Bits contemplated by the Unauthorized Sale is $1,700,000.00.

177. The sale of Bits would constitute a change in corporate governance and cause DHI to cease to exist.

178. The Unauthorized Transaction therefore must meet the requirements of 8 Del. C. § 271 ("Section 271").

179. Defendants did not comply with the requirements of Section 271 before purportedly engaging in the Unauthorized Sale.

180. Defendants did not obtain authorization from the Board.

181. Defendants did not cause a shareholder vote about the Unauthorized Sale to occur.

182. The Board Resolution rejects the Unauthorized Sale pursuant to Section 271.

183. Because the requirements of Section 271 have not been met, the Unauthorized Sale violates Delaware law.

184. Because the Unauthorized Sale violates Delaware law, the Unauthorized Sale may not proceed.

185. Because the Unauthorized Sale is illegal, Plaintiffs are entitled to declaratory relief in the form or a judgment declaring the Unauthorized Sale void and ordering the return of physical possession of the Bits to DHI.

**COUNT TWO**
**Declaratory Judgment**
**(Quiet Title)**

186. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

187. Because the Unauthorized Sale violates Delaware law, including Section 271, and is therefore void as described above, title to the Bits never transferred to Defendant 3K.

188. Defendant 3K has no right to claim title to the Bits as a result of the Unauthorized Sale.

189. Because the Unauthorized Sale is void and title to the Bits never transferred from DHI, Plaintiffs are entitled to declaratory relief in the form or a judgment declaring that DHI holds free and clear title to the Bits.

**COUNT THREE**
**Mandatory Injunction**
**(Turnover Order)**

190. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

191. Under Delaware law, shareholder approval is required for the sale, lease, or exchange of "all or substantially all" of a corporation's assets. *See* 8 Del. C. § 271.

192. This requirement mandates a two-step process: first, the board of directors must approve the transaction, and then the shareholders must authorize it by a majority vote of the outstanding stock entitled to vote.

193. The determination of whether a transaction involves "substantially all" of a corporation's assets is both quantitative and qualitative. Delaware courts have clarified that this standard is not based solely on the size of the sale but also on its qualitative effect on the corporation.

194. The Delaware Supreme Court affirmed that a transaction constitutes "substantially all" of a corporation's assets if it results in a radical transformation of the corporation, such as the sale of its primary income-generating asset. *See* Thorpe by Castleman v. CERBCO, 676 A.2d 436 (Del. 1996).

195. It is well-settled that this Court emphasized that the statute applies only to transactions involving "all or substantially all" of the corporation's assets, and this determination must relate to the statutory language and the specific facts of the case. *See* Gimbel v. Signal Cos., 316 A.2d 599 (Del. Ch. 1974).

**A. Agreement on an *Ex Parte* Basis**

196. Moreover, Section 13 of the Agreement provides in part:

> "The parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement are not performed in accordance with their specific terms or are otherwise breached. It is accordingly agreed that, in addition to any other applicable remedies of law or equity, the Parties shall be entitled to an injunction or injunctions, without proof of damages, to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement."

197. Accordingly, Defendants SCI, T. Balthrop and S. Beauchamp have unquestionably agreed to an injunction under these circumstances on an *ex parte* basis.

198. A transaction constitutes "substantially all" of a corporation's assets if it results in a radical transformation of the corporation, such as the sale of its primary income-generating asset. *See* Thorpe by Castleman v. CERBCO, 676 A.2d 436 (Del. 1996).

199. As such, Plaintiffs are entitled to injunctive relief to halt the Unauthorized Sale.

200. As such, Plaintiffs are entitled to injunctive relief enjoining Defendants from further transferring possession of the Bits among each other or to a third party.

201. As such, Plaintiffs are entitled to injunctive relief enjoining Defendants from selling the Bits to each other or to a third party.

**COUNT FOUR**
**Unjust Enrichment**

202. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

203. Defendants have been enriched by receiving and retaining benefits conferred by Plaintiffs, including but not limited to the Bits.

204. Defendants accepted and retained the benefits conferred by Plaintiffs.

205. Upon information and belief, Defendants' possession of the Bits is not governed by contract.

206. Defendants' retention of these benefits occurred under circumstances that make it inequitable and unjust for Defendants to retain such benefits without payment or restitution to Plaintiff.

207. Defendants have not provided fair value or adequate compensation to Plaintiffs in exchange for the benefits received.

208. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have suffered damages in an amount to be determined at trial.

209. Equity and good conscience require that Defendants disgorge the benefits unjustly retained and make restitution to Plaintiffs.

210. There is no adequate remedy at law to fully compensate Plaintiffs for Defendants' unjust enrichment.

**COUNT FIVE**
**Breach of Fiduciary Duty**

211. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

212. At all relevant times, Defendants SCI, T. Balthrop, S. Beauchamp and Z. Beauchamp owed fiduciary duties to DHI and ASTL including but not limited to duties of loyalty, care, and good faith, by virtue of Defendants position as shareholders, de facto officers of the Company, and Board member of the Company.

213. As a fiduciary, Defendants were required to act in the best interests DHI, to refrain from self-dealing, to avoid conflicts of interest, to disclose material information, and to act loyally and in good faith.

214. Defendants SCI, T. Balthrop, S. Beauchamp and Z. Beauchamp breached these fiduciary duties by, among other things:

i. engaging in self-dealing / misappropriating corporate opportunities;

ii. placing personal interests ahead of those of Plaintiffs;

iii. failing to disclose material facts regarding the Unauthorized Sale;

iv. acting in bad faith or with gross negligence; and/or

v. causing or permitting DHI to enter into unfair transactions such as the Unauthorized Sale.

215. Defendants' conducts were not the product of a valid exercise of business judgment and are not protected by the business judgment rule.

216. As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered damages, including but not limited to financial loss, loss of opportunity, dilution, improper distributions.

217. Defendants have been unjustly enriched by their wrongful conducts and should be required to disgorge all ill-gotten gains.

218. Plaintiffs have no adequate remedy at law and are entitled to equitable relief, including disgorgement, rescission, injunctive relief, and/or the imposition of a constructive trust.

**COUNT SIX**
**Breach of the Covenant of Good Faith Fair Dealing**

219. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

220. Plaintiffs DHI and STL and Defendants T. Balthrop and S. Beauchamp entered into a valid and binding agreement, the Letter Agreement, governed by Delaware law. *See* Ex. A.

221. The Letter Agreement reflects the parties' reasonable expectations and allocates risks and benefits between them. *Id*.

222. Defendants T. Balthrop, S. Beauchamp and SCI engaged in conduct that, while not expressly prohibited by the Letter Agreement, was arbitrary, unreasonable, and in bad faith, including but not limited to the Unauthorized Sale. *Id*.

223. Defendants' conduct frustrated Plaintiffs' reasonable expectations and deprived Plaintiffs of the fruits of the bargain that Plaintiffs reasonably anticipated when entering into the Agreement.

224. Defendants' actions were inconsistent with the spirit, purpose, and intent of the Agreement and violated the implied covenant of good faith and fair dealing inherent in every Delaware contract.

225. As a direct and proximate result of Defendants' breach of the implied covenant, Plaintiffs have suffered damages, including but not limited to lost economic benefits, diminished value, foregone opportunities.

226. Plaintiffs seek damages and equitable relief as appropriate.

**COUNT SEVEN**
**Conversion**

227. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

228. Plaintiffs had a property interest or right to possession of the Bits.

229. Defendants SCI, T. Balthrop, S. Beauchamp, 3K and Groves wrongfully exercised dominion or control over the Bits by entering into the Unauthorized Sale.

230. Defendants SCI, T. Balthrop, S. Beauchamp, 3K and Groves wrongfully exercised dominion or control over the Bits by transferring physical possession of the Bits from DHI without DHI's knowledge or consent to Defendants 3K and Groves.

231. Defendants' conduct denied or was inconsistent with the Plaintiffs' rights to reclaim the Bits provided under the Letter Agreement.

232. Plaintiffs seek damages and equitable relief as a result of the conversion.

**COUNT EIGHT**
**Replevin**

233. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

234. Plaintiffs have a present, superior right to possession of the Bits.

235. Defendants have possession or control of the Bits or Defendants transferred possession or control of the Bits to a third party.

236. Defendants wrongfully detained the Bits.

237. Moreover, despite Plaintiffs' insistence on not proceeding with the Unauthorized Sale or a purchase money security interest in the Bits, Defendants transferred possession of the Bits away from DHI without DHI's knowledge or consent.

238. Plaintiffs demanded return of the Bits.

239. Defendants wrongfully exercised dominion or control over the Bits by entering into the Unauthorized Sale.

240. Defendants wrongfully exercised dominion or control over the Bits by transferring possession of the Bits without DHI's knowledge or consent.

241. Plaintiffs seek damages and equitable relief as a result of the replevin.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court:

i. Issue a declaratory judgment declaring the Unauthorized Sale void and ordering return of possession of the Bits to DHI;

ii. Issue a declaratory judgment quieting title to the Bits and declaring that DHI holds title to the Bits free and clear;

iii. Enjoin Defendants from proceeding with the Unauthorized Sale of DHI's entire inventory of Bits, which constitutes all or substantially all of DHI's assets; from further transferring possession of the Bits; and from further engaging in unauthorized transactions related to the Bits;

iv. Enjoin Defendants from proceeding with the disposal of any material amount of DHI's inventory of Bits without the written authorization of the Board of DHI;

v.

vi. Enter judgment in favor of Plaintiffs and against Defendants on all Counts;

vii. Award Plaintiffs damages in an amount to be determined;

viii. Award pre- and post-judgment interest; and

ix. Award costs and such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 30, 2026

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

**Of Counsel:**
**KOR Law LLP**

Kenny G. Oh, Esq.
Muriel S. Raggi, Esq.
One World Trade Center, 85th Fl.
New York, NY 10007
(212) 220-8768
kenny@korllp.com
muriel@korllp.com